UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANNY THOMPSON,

                          Petitioner,                   Case Number 12-14831
                                                         Honorable David M. Lawson

v.

CATHERINE BAUMAN,

                          Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Danny Thompson was sentenced by a Michigan court to life in prison for the first-degree premeditated murder of William Beauchamp in Genesee County, Michigan. Thompson challenges his conviction and sentence in a *pro se* petition for a writ of habeas corpus he filed under 28 U.S.C. § 2254. In his original petition, he raised nine claims based on violations of the Due Process Clause and the Fourth, Fifth, and Sixth Amendments; prosecutorial misconduct for failing to disclose exculpatory evidence; the trial court's vouching for a prosecution witness; and ineffective legal representation. At Thompson's request, the Court held the petition in abeyance, and he returned to state court to exhaust two additional claims alleging ineffective assistance of trial and appellate counsel. He filed an amended petition on May 13, 2015, which included those claims. He also filed a motion for discovery of the affidavits submitted in support of his arrest warrant, and a motion for issuance of subpoenas. Warden Catherine Bauman filed responses to the petition and the amended petition, contending that Thompson's new claims were all raised after the statute of limitations and should be dismissed as untimely, and that all of the claims raised are meritless. She did not respond to the motions. The petitioner filed replies in support of his petitions. Because the

petitioner's claims lack merit, as explained in detail below, and he is not entitled to the relief he seeks in his motions, the Court will deny the original and amended petitions and the motions.

I.

When William Beauchamp's body was found floating in the Flint River in 1996, it became apparent to authorities that he came to his death through foul play. The petitioner was last seen with Beauchamp, but the petitioner's wife provided him with an alibi. The investigation continued over the years, and it refocused on the petitioner in 2006 when Randy Snyder, who was with the petitioner on the evening of Beauchamp's death, came forward to implicate him in the murder. Snyder was serving a sentence at the time and apparently sought to barter his information for a shorter sentence.

The police investigation led to the issuance of a warrant for the arrest of the petitioner, who was living in Tennessee at the time. The petitioner waived extradition, and he was returned to Michigan to stand trial for first-degree murder. Snyder was charged as well, and proceeded to trial with the petitioner, but with a separate jury. The Michigan Court of Appeals summarized the evidence adduced at the petitioner's Genesee County, Michigan circuit court trial as follows:

> Defendant's conviction arises from the October 7, 1996, drowning death of William Beauchamp in Genesee County. Julie Vega, a bartender at the Viking Lounge bar, testified that defendant and codefendant Randy Snyder encountered Beauchamp, a homeless man, at the bar on the evening of October 6, 1996. According to Vega, defendant remarked that he wanted to harm Beauchamp for something he had done to defendant's grandmother. Beauchamp thereafter left the bar with defendant and Snyder, despite Vega's warning not to go with them.
>
> Beauchamp's body was discovered in the Flint River near a fishing site the following morning. A forensic examination indicated that he had been struck in the head with a blunt object, dragged to the river, and immersed in the water while still alive. The examiner determined that the cause of Beauchamp's death was drowning. After seeing a news report of Beauchamp's death, Vega contacted the police and gave them defendant's name. She also identified defendant's photograph from a

-2-

photographic array. Lieutenant Shanlian interviewed defendant, who admitted meeting Beauchamp at the bar, but claimed that he left the bar with his wife. Defendant's wife corroborated defendant's alibi.

The investigation stalled until Lieutenant Shanlian learned in 2006 that Snyder had made statements implicating himself and defendant in Beauchamp's death. After interviewing Snyder, Shanlian obtained a warrant for defendant's arrest and drove to Tennessee where defendant was then living. After defendant was arrested, he agreed to waive extradition and return to Michigan. Shanlian interviewed defendant after his arrest. Defendant admitted leaving the bar with Snyder and Beauchamp and going to the fishing site, but stated that he was too intoxicated to fully understand what was happening. He claimed that he and Beauchamp got into a fight, during which Beauchamp jumped on him and immobilized him, and then Snyder hit Beauchamp with a tire iron to get him off defendant. According to defendant, he and Snyder then drove away, leaving Beauchamp behind. Defendant subsequently recalled that he and Beauchamp fought in the water, but did not admit to drowning him.

Before trial, defendant moved to suppress his confession on the ground that it was not voluntarily given. Defendant argued in part that his confession was induced by Shanlian's threats that his wife could be arrested for obstruction of justice and that his children could be placed in foster care. The trial court held a[n evidentiary] hearing at which Shanlian denied threatening to arrest defendant's wife or to remove defendant's children. Shanlian testified that defendant raised these issues when Shanlian asked him whether he had asked his wife to lie for him in the 1996 interview. Shanlian claimed that he repeatedly told defendant that he did not intend to arrest his wife, although he acknowledged telling defendant that the prosecutor had the authority to initiate criminal charges against her. The trial court ultimately determined that, under the totality of the circumstances, defendant's confession was not involuntary.

*People v. Thompson*, No. 284160, 2009 WL 2605417, at *1 (Mich. Ct. App. Aug. 25, 2009).

Additional forensic evidence was offered at trial in the form of expert testimony from a DNA scientist. Dr. Nibedita Mahanti of the State Police Crime Laboratory testified that DNA testing on the two cigarette butts recovered from the murder scene established that the petitioner was a major donor on one, and Randy Snyder's DNA was found on the other one. Dr. Mahanti opined that the probability of someone other than the petitioner matching the DNA was 1:45.3 quadrillion for Caucasians, and the probability of someone other than Snyder matching was 1:156.2 billion.

-3-

The jury found the petitioner guilty of first-degree murder, and he was sentenced as a fourth habitual felony offender to life in prison without the possibility of parole.

The Michigan Court of Appeals affirmed the first-degree murder conviction, and the state supreme court denied leave to appeal on December 25, 2009. *People v. Thompson*, 2009 WL 2605417 (Mich. Ct. App. Aug. 25, 2009), *lv. to appeal den.*, 485 Mich. 1081, 777 N.W.2d 195 (2010). The petitioner returned to the trial court and filed a motion for relief from judgment, which was denied on the merits, *People v. Thompson*, No. 07-204643-FC, Order (Genesee County Cir. Ct. Nov. 18, 2010), and the state appellate courts denied leave to appeal, *People v. Thompson*, No. 304656, Order (Mich. Ct. App. Nov. 22, 2011), *lv. to appeal den.* 492 Mich. 853, 817 N.W.2d 89 (2012).

On October 30, 2012, the petitioner filed his original petition for a writ of habeas corpus in this Court, in which he seeks relief on the following nine claims that he raised before the Michigan Supreme Court:

    I.      The trial court violated due process by admitting the petitioner's coerced confession obtained by threats to prosecute his wife and remove their children from her custody.

    II.     The trial court violated due process by refusing to suppress a key prosecution witness's identification testimony that resulted from an unfairly suggestive photo line-up in which the petitioner was the only bald-headed subject.

    III.    The trial court violated due process by failing to give the proper oath before jury selection. Trial counsel was ineffective for failing to object at the time.

    IV.    The prosecutor engaged in misconduct by an improper closing argument. Trial counsel was ineffective for failing to object.

    V.      The trial court improperly vouched for witness Lieutenant Shanlian by calling him "our friend" before the jury.

VI.     The petitioner's rights were violated by his removal from Tennessee without compliance with extradition law.

VII.    The prosecutor improperly withheld DNA data, a *Brady* violation.

VIII.   Petitioner was denied the effective assistance of counsel by the cumulative effect of multiple errors.

IX.     Petitioner was denied the effective assistance of appellate counsel for failure to raise three issues on appeal.

On January 30, 2014, the petitioner filed a motion to hold the habeas petition in abeyance so that he could return to state court to present a new claim in a post-conviction motion for relief from judgment. The petitioner filed his successive motion for relief from judgment on May 20, 2014. The trial court denied the petitioner's motion, and the state appellate courts again denied leave to appeal. *People v. Thompson*, No. 322496, Order (Mich. Ct. App. Sept. 15, 2014), *lv. to appeal den.* 497 Mich. 1011, 862 N.W.2d 181 (2015). The petitioner filed an amended petition on May 13, 2015 raising the following additional claims:

X.      The petitioner was denied the effective assistance of trial counsel by his counsel's failure to challenge his arrest warrant as invalid because of misleading statements and omissions by the police, neglecting to raise a meritorious Fourth Amendment claim.

XI.     The petitioner was denied the effective assistance of appellate counsel by his counsel's failure to investigate and raise ineffectiveness of trial counsel in his direct appeal for failing to raise a meritorious Fourth Amendment claim.

The petitioner did not repeat his original claims in his amended petition, which might cast doubt on whether those claims remain to be decided. An amended petition for a writ of habeas corpus "supersedes" an earlier-filed petition "for all purposes." *Calhoun v. Bergh*, 769 F.3d 409, 410 (6th Cir. 2014) (quoting *In re Refrigerant Compressors Antitrust Litigation*, 731 F.3d 586, 589 (6th Cir. 2013). However, "*pro se* complaint[s are] . . . h[e]ld to less stringent standards than formal

pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  It appears that the petitioner intended his "amended" petition to be in actuality a "supplemental" petition.  The latter does not supersede — or replace — the original petition; instead, it "deal[s] with events subsequent to the pleading to be altered and represent[s] additions to or continuations of the earlier pleadings." Charles Alan Wright, Arthur Miller, & Edward H. Cooper, *Federal Practice and Procedure* § 1504 (3d ed. 1998).  Because "'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers,'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97 (1976)), penalizing the petitioner for his inaccurate nomenclature would be imprudent.  Therefore, the Court will address the claims in both petitions.

The warden filed responses to both the original and amended petitions, arguing in each pleading its boilerplate contentions that the claims are untimely, procedurally defaulted, not cognizable, and without merit.

The "procedural default" argument is a reference to the rule that the petitioner did not preserve properly some of his claims in state court, and the state court's ruling on that basis is an adequate and independent ground for the denial of relief.  *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  The untimeliness argument references the requirement that a habeas petitioner must bring his claims within one year of the date his conviction becomes final.  *See* 28 U.S.C. 2244(d)(1).  The Court finds it unnecessary to address these procedural questions.  They are not a jurisdictional bar to review of the merits, *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005) (procedural default); *Smith v. State of Ohio Dept. of Rehabilitation*, 463 F. 3d 426, 429, n.2 (6th Cir. 2006) (statute of limitations), and "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits," *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir.

2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)).  These procedural defenses will not affect the outcome of this case, and it is more efficient to proceed directly to the merits.

## II.

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering an application for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel.  *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003).  Because Thompson filed his petition after the AEDPA's effective date, its standard of review applies.  Under that statute, if a claim was adjudicated on the merits in state court, a federal court may grant relief only if the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or if the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1)-(2). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the *dicta*, of [the Supreme] Court's decisions."  *White v. Woodall*, --- U.S. ---, 134 S. Ct. 1697, 1702 (2014) (internal quotation marks and citations omitted).  "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

The distinction between mere error and an objectively unreasonable application of Supreme Court precedent creates a substantially higher threshold for obtaining relief than *de novo* review. The AEDPA thus imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be "given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (finding that the state court's rapid declaration of a mistrial on grounds of jury deadlock was not unreasonable even where "the jury only deliberated for four hours, its notes were arguably ambiguous, the trial judge's initial question to the foreperson was imprecise, and the judge neither asked for elaboration of the foreperson's answers nor took any other measures to confirm the foreperson's prediction that a unanimous verdict would not be reached" (internal quotation marks and citations omitted)); *see also Dewald v. Wriggelsworth*, 748 F.3d 295, 298-99 (6th Cir. 2014); *Bray v. Andrews*, 640 F.3d 731, 737-39 (6th Cir. 2011); *Phillips v. Bradshaw*, 607 F.3d 199, 205 (6th Cir. 2010); *Murphy v. Ohio*, 551 F.3d 485, 493-94 (6th Cir. 2009); *Eady v. Morgan*, 515 F.3d 587, 594-95 (6th Cir. 2008); *Davis v. Coyle*, 475 F.3d 761, 766-67 (6th Cir. 2007); *Rockwell v. Yukins*, 341 F.3d 507, 511 (6th Cir. 2003) (en banc).  Moreover, habeas review is "limited to the record that was before the state court."  *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011).

## A.

In his first claim, the petitioner argues that the state courts violated his constitutional rights when his confession was offered in evidence at trial.  He contends that the confession was not voluntary because the police officer coerced him into talking by threats to prosecute his wife and remove their children from her custody.

The state court rejected that argument, noting that the petitioner was given the warnings required by *Miranda v. Arizona*, 384 U.S. 436 (1966), before any questions were asked of him.  The

court then assessed whether the petitioner's evaluated statement was "freely and voluntarily made," considering "the totality of the circumstances," guided by several relevant factors. *People v. Thompson*, 2009 WL 2605417, at *2. The court then reviewed the lower court record, noting that the state's and petitioner's versions of the circumstances surrounding the statement differed, but that the trial court's conclusion (which supported the state's position) was supported by the evidence. *Id.* at *2-3. The court reasoned:

> According to defendant, [police officer] Shanlian made comments to the effect that he would contact the prosecutor about bringing charges against defendant's wife for obstruction of justice if defendant did not provide a statement. Defendant claimed that Shanlian also advised him that if defendant's wife were arrested, their children would be placed in foster care. Defendant also claimed that he was cold and uncomfortable in the interrogation room, and was not given an opportunity to take his pain medication.
>
> Conversely, Shanlian testified that he affirmatively advised defendant that he did not intend to arrest defendant's wife, although he acknowledged advising defendant that the prosecutor could independently decide to charge her with obstruction of justice. A transcript of recorded portions of defendant's interview corroborates this account. Shanlian's acknowledgment that any decision to charge defendant's wife rested with the prosecutor, and not with him, negates an inference that Shanlian was attempting to induce a confession by offering leniency for defendant's wife as a quid-pro-quo for defendant's confession, or by threatening to bring criminal charges against defendant's wife as a consequence of defendant's refusal to cooperate and give a statement. Shanlian also testified that defendant was regularly offered food, water, and bathroom breaks. Moreover, according to Shanlian, it was defendant who first raised the issue of possible criminal charges against defendant's wife. Shanlian testified that he responded to defendant's question by positively stating that he had no intention of arresting defendant's wife, but acknowledging that he could not speak for the prosecutor, who had the authority to independently initiate charges for obstruction of justice. This account, if true, indicates that Shanlian did not seize upon defendant's concern for his wife's jeopardy as a means of extracting a confession from him.
>
> It was the trial court's prerogative to assess the credibility of the witnesses. Considering the totality of the circumstances in accordance with Shanlian's version of events, which the trial court apparently found more credible, we conclude that defendant's confession was not involuntarily given. The trial court did not err in denying defendant's motion to suppress his confession.

*Ibid.* (citations omitted).

The state courts did not contravene or unreasonably apply federal law when ruling that the petitioner's confession was voluntary. Under federal law, a confession is considered involuntary if (1) the police extorted the confession by means of coercive activity; (2) the coercion in question was sufficient to overbear the will of the accused; and (3) the will of the accused was in fact overborne "*because* of the coercive police activity in question." *McCall v. Dutton*, 863 F.2d 454, 459 (6th Cir. 1988) (emphasis in original). The ultimate question is "whether, under the totality of the circumstances, the challenged confession was obtained in a manner compatible with the requirements of the Constitution." *Miller v. Fenton*, 474 U.S. 104, 112 (1985). Factors to consider include the presence or absence of police coercion (a "crucial element"), length of interrogation, location of interrogation, continuity of interrogation, the suspect's maturity and education, the suspect's physical condition and mental health, and whether the suspect was advised of his or her *Miranda* rights. *Withrow v. Williams*, 507 U.S. 680, 693-94 (1993). Without coercive police activity, however, a confession should not be deemed involuntary. *Colorado v. Connelly,* 479 U.S. 157, 167 (1986) (stating that "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause"). The burden of proving that a confession was given involuntarily rests with the petitioner. *Boles v. Foltz*, 816 F.2d 1132, 1136 (6th Cir. 1987). Voluntariness need only be established by a preponderance of the evidence. *Ibid*.

The state courts found that the police officer did not coerce the petitioner to confess, accepting officer Shanlian's version of the encounter. This Court must do likewise; the state court's factual findings must be treated as presumptively correct. 28 U.S.C. § 2254(e)(1). The petitioner

may overcome this presumption only with clear and convincing evidence. *Ibid.* Although the voluntariness of a confession is a legal question that falls outside the scope of this presumption, *Miller v. Fenton*, 474 U.S. 104, 115 (1985), "subsidiary factual questions," including a state court's credibility determinations at a judicial hearing, are entitled to the § 2254(e)(1) presumption. *See id.* at 112; *Ramonez v. Berghuis*, 490 F.3d 482, 490 (6th Cir. 2007).

The Supreme Court has held that a combination of threats and promises may be sufficient to overbear an interviewee's will and constitute impermissible coercion. *Lynumn v. Illinois*, 372 U.S. 528, 534 (1963). The circumstances in *Lynumn* are distinguishable from those presented in this case. In *Lynumn*, the defendant was interrogated in her apartment while surrounded by three police officers and a police informant. The officers threatened that if she did not cooperate, state financial aid for her infant children would be cut off and the children would be taken from her. According to the state courts, officer Shanlian made no such threats or any others. Shanlian did not attempt to use the petitioner's wife as a negotiating piece to trade for the petitioner's statement. Accepting the facts as the state court determined them, there is no other evidence that supports a finding that the police engaged in coercive tactics, which is a necessary prerequisite for a finding of involuntariness. *Connelly,* 479 U.S. at 167.

The petitioner is not entitled to habeas relief on this claim.

## B.

In his second claim, the petitioner challenges the admission of identification testimony from bartender Julie Vega on the ground that a pretrial photo lineup was unduly suggestive, because none of the photos depicted a fully bald-headed individual with a goatee except the petitioner's. The state

court of appeals denied that claim, rejecting the premise that the differences in the photos were stark or material:

> Differences among participants in a lineup are significant only to the extent that they are apparent to the witness and substantially distinguish the defendant from the other participants in the lineup. "Physical differences generally relate only to the weight of an identification and not to its admissibility." After reviewing the photographic array, we agree with the trial court that the physical differences between the participants do not substantially distinguish defendant from the other participants. Although defendant is partially bald, the other participants have high hairlines and short hair, and one participant appears to have a shaven, if not bald, head. Defendant's goatee is not particularly prominent, and two other subjects (one and six) also appear to have thin facial hair on their chins. Contrary to what defendant asserts, he does not appear noticeably older than the other participants. Although subject three appears to be younger, the remaining subjects, including defendant, appear to be relatively close in age. The trial court did not clearly err in finding that the photographic array is not impermissibly suggestive.

*Thompson*, 2009 WL 2605417, at *3 (citations omitted).

That decision reasonably applied the pertinent federal law on the subject. The Due Process Clause protects the accused against the introduction of evidence that results from an unreliable identification obtained through unnecessarily suggestive procedures. *Moore v. Illinois*, 434 U.S. 220, 227 (1977). A conviction based on identification testimony that follows a pretrial photo identification violates the defendant's constitutional right to due process "if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384 (1968). If an identification procedure is found to be unduly suggestive, then the court must assess several factors to determine whether the in-court identification was free from the taint of the identification procedure. It is the likelihood of misidentification that violates a defendant's due process right. *Neil v. Biggers*, 409 U.S. 188, 198 (1972).

-12-

The state court of appeals did not apply the relevant factors to determine if Vega's testimony was based on something other than the photo lineup, because the court found that the photo lineup was not unduly suggestive.  The petitioner takes issue with that conclusion, but he does not develop that argument.  Instead, the petitioner focuses primarily on whether Vega's testimony had a basis independent of the photo array.  But the factors that bear on that issue become "applicable [only] when the police have arranged suggestive circumstances leading the witness to identify a particular person as the perpetrator of a crime."  *Perry v. New Hampshire*, --- U.S. ---, 132 S. Ct. 716, 720 (2012).

Moreover, Ms. Vega identified the petitioner by name to the police, and the petitioner himself admitted to the police that he was at the bar that night.  So Vega's identification of the petitioner in a photo array had very little impact on her in-court identification.  The state court's conclusion that the photographs of individuals did not cause "a very substantial likelihood of irreparable misidentification," reasonably applied Supreme Court precedent and is entitled to deference.

## C.

In his third claim, the petitioner argues that his trial was tainted from the start because the record does not show that the trial judge administered an oath to the jury before jury selection began.  The oath was required by a state court rule.  Mich. Ct. R. 6.412(B) ("Before beginning the jury selection process, the court should give the prospective jurors appropriate preliminary instructions and must have them sworn.").  The state court of appeals denied relief because it found that the oath at that stage of the case was not constitutionally required, and the trial court administered another

-13-

oath exhorting the jurors to "well and truly try" the case based on the evidence, *see* Mich. Comp. Laws§ 768.14, after jury selection.

The petitioner has not cited any federal cases that hold that a federal right is violated when a state judge fails to swear the jury before jury selection begins. In fact, he cited no cases whatsoever. It is plain that the state court of appeals decided the issue under state law, which this Court will not second-guess. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (noting "that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). The petitioner has not shown a right to federal relief on this claim.

### D.

The petitioner next criticizes the prosecutor's closing argument, contending that it was not based on the evidence adduced at trial. He also contends that his lawyer was constitutionally ineffective by not objecting to the prosecutor's argument. The state court of appeals rejected the claim because it found that there was evidence in the record to support the state's assertions. In reaching that conclusion, the court summarized the petitioner's contention that the prosecutor

> stated that (1) Beauchamp was "very likely rendered unconscious," (2) Beauchamp "did not arrive at the Irish Road site conscious," (3) defendant dragged Beauchamp out of the truck, and (4) Beauchamp was beat in the truck before being taken to the Irish Road site. Defendant claims that these purported facts were not supported by the evidence.

*Thompson*, 2009 WL 2605417, at *5. Disagreeing with the petitioner's argument, the court reasoned:

> Here, Dr. Qazi Azher, the forensic pathologist who performed the autopsy on Beauchamp, testified about his several injuries, including facial bruising and lacerations, bilateral eye hemorrhages, broken nasal bones, broken teeth, subcutaneous hemorrhage beneath the scalp, as well as bruising and abrasions on both sides of his body. In particular, with regard to the abrasions on the right side of Beauchamp's chest and abdomen, Dr. Azher testified: "basically these are like

-14-

drag marks." When specifically asked about these abrasion injuries, Dr. Azher repeatedly testified that they were consistent with Beauchamp being dragged. Dr. Azher also testified that the head injuries were consistent with blunt trauma to the head. He further opined that Beauchamp was alive when he entered the water, but indicated that Beauchamp could have been unconscious. In light of this trial testimony, as well as the reasonable inferences that arise from the evidence, this claim of prosecutorial misconduct lacks merit. Thus, defendant's claim of ineffective assistance of counsel premised on this argument is also without merit.

*Ibid.*

The clearly established federal law relevant to a habeas court's review of a prosecutorial misconduct claim is the Supreme Court's decision in *Darden v. Wainwright*, 477 U.S. 168 (1986). *Parker v. Matthews*, --- U.S. ---, 132 S. Ct. 2148, 2153 (2012). In *Darden*, the Supreme Court held that a "prosecutor's improper comments will be held to violate the Constitution only if they 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Ibid*. (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). In assessing the petitioner's claims under 28 U.S.C. § 2254, this Court must ask whether the Michigan Court of Appeal's decision denying the petitioner's prosecutorial misconduct claims "'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Id*. at 2155 (quoting *Harrington*, 562 U.S. at 103).

That difficult standard has not been met here. The court of appeals accurately summarized the evidence, which provided an adequate basis for the prosecutor's arguments. That summary is well supported by the trial record. The state court's decision that no prosecutorial misconduct occurred was not "so far out of line with the very general standard" established in *Darden* as to entitle the petitioner to habeas relief. *Davis v. Lafler*, 658 F.3d 525, 535 (6th Cir. 2011) (en banc).

-15-

E.

The petitioner next contends that the state court improperly rejected his claim that the trial judge "vouched" for the testimony of police officer Shanlian by referring to him as "our friend" when he administered the oath before he testified. The court of appeals described the circumstance as follows:

> One morning, just before the trial was to continue, the trial court stated: "Members of the jury, good morning, all. I'll swear in our friend Lieutenant Shanlian here so [defense counsel] can continue the cross." Considered in context, we conclude that the trial court's statement was merely a colloquial use of the phrase "our friend" that would not lead reasonable jurors to believe that the trial court was vouching for the credibility of this witness

*Thompson*, 2009 WL 2605417, at *5. This Court agrees. The judge's offhanded comment did not imply approval of the witness's testimony or an endorsement of his credibility. Even if the state court determined that the comment did constitute vouching, the petitioner is not entitled to habeas corpus relief unless the error had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). Otherwise, the error is deemed harmless. There is no indication that the comment had any effect on the jury's verdict. No relief is warranted on this claim.

F.

In his sixth claim, the petitioner argues that the state extradited him improperly, and therefore his conviction should be deemed a nullity. He contends that the Michigan detectives seized him illegally while he resided in Tennessee, the information furnished to support his detention did not rise to the level of probable cause, and the Michigan authorities did not comply with the Uniform Criminal Extradition Act, leading to a violation of his Fourth Amendment rights.

-16-

The petitioner is not entitled to habeas corpus relief on this claim because this argument challenges only the means by which he was brought before a Michigan court to answer the murder charge brought against him. Even if extradition protocols were violated, the validity of his conviction and sentence could not be called into question on that basis. It is an "established rule that illegal arrest or detention does not void a subsequent conviction." *Gerstein v. Pugh*, 420 U.S. 103, 119 (1975) (citing *Frisbie v. Collins*, 342 U.S. 519 (1952); *Ker v. Illinois*, 119 U.S. 436 (1886)). In *Frisbie*, the Court applied this rule to reject a claim that the defendant's conviction was void because he was forcibly abducted from one state to another to secure his presence for trial. The Court explained that "the power of a court to try a person for crime is not impaired by the fact that he had been brought within the court's jurisdiction by reason of a 'forcible abduction.' . . . [D]ue process of law is satisfied when one present in court is convicted of crime after having been fairly apprized of the charges against him and after a fair trial in accordance with constitutional procedural safeguards. There is nothing in the Constitution that requires a court to permit a guilty person rightfully convicted to escape justice because he was brought to trial against his will." *Frisbie*, 342 U.S. at 522. Under *Ker* and *Frisbie*, "the manner by which a defendant is brought to trial does not affect the [state]'s ability to try him." *United States v. Matta–Ballesteros*, 71 F.3d 754, 762 (9th Cir. 1995).

The petitioner's challenge to his extradition from Tennessee will not furnish a basis to question his conviction or sentence. *See Danzy v. Johnson*, 417 F. Supp. 426, 431 (E.D. Pa. 1976) ("The judgment of the state which has achieved the requisite custody of the accused to try him is not destroyed by unlawful extradition; a subsequent conviction and sentence is accordingly immune

from attack on that basis."), *aff'd*, 582 F.2d 1273 (3d Cir. 1978).  Habeas relief will not be granted on this claim.

G.

The petitioner did not present his seventh claim on direct appeal.  Instead, he alleged in his first post-conviction motion that the prosecutor did not produce certain raw DNA data so that it could be considered by the defense expert.  The trial judge thoroughly considered the factual basis for this claim, and rejected it, concluding that the petitioner failed to establish any of the elements of his claim under *Brady v. Maryland*, 373 U.S. 83 (1963).  The state court did not unreasonably apply *Brady*.

The basis for the petitioner's claim is found in a letter from a Dr. Theodore Kessis, a DNA expert presumably engaged by defense counsel to examine the findings that the petitioner's DNA was found on a cigarette butt recovered from the murder scene.  In the letter, dated six months before the trial, Dr. Kessis wrote that he had not received some of the raw data needed to complete his analysis.  He explained: "While I have no doubt that the data associated with the results reported for items 1618.08 (L-3) and 1618.0c (L-5) exist and are issue free, I can not simply make such assumptions in the process of formulating an opinion."  Order Denying Mot. for Relief From J. at 16 (No. 07-20463, Genesee Co. Cir. Ct., Nov. 18, 2010) (quoting Letter of May 8, 2007).

Suppression by the prosecution of evidence favorable to the defendant upon request violates the Due Process Clause where evidence material to either guilt or punishment of the defendant is withheld, irrespective of the good or bad faith of the prosecution.  *Brady*, 373 U.S. at 87.  There are three components of a *Brady* violation claim: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory or because it is impeaching; (2) the evidence must have

-18-

been suppressed by the state, either willfully or inadvertently; and (3) prejudice must have ensued.

*Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).

The trial judge concluded that the petitioner did not show that the raw DNA data was favorable to him. She reasoned:

> Defendant has provided no evidence to suggest that, had Dr. Kessis been provided with the alleged missing information, he would have been able to impeach Dr. Nibedita Mahanti's conclusion that defendant's DNA matched DNA found on cigarette butts recovered from the scene of the murder. Defendant has not articulated any questions that he would have asked Mahanti on cross-examination, nor has he presented the proposed testimony of any expert witness. Dr. Kessis stated in his letter that he did not believe that there was an error in the testing.

Order Denying Mot. for Relief From J. at 18 (No. 07-20463, Genesee Co. Cir. Ct., Nov. 18, 2010).

The Court finds no error in that reasoning. The petitioner has not offered anything to suggest that a failure to disclose raw DNA data to Dr. Kessis (if, in fact, that evidence was not disclosed) would have had any effect on the defense's presentation of its case. There is nothing in the record indicating that the evidence would have been exculpatory — that is, that it would have tended to exonerate the petitioner — or that it would have assisted in impeaching the state's DNA expert witness. Because defense counsel chose not to call Dr. Kessis as a defense expert, the opposite is likely true. The petitioner's argument that the raw DNA data would have been helpful is speculative. And "mere speculation" is insufficient to establish the exculpatory nature of the raw DNA data. *Wood v. Bartholomew*, 516 U.S. 1, 6 (1996); *Thorne v. Timmerman-Cooper*, 473 F. App'x 457, 466-67 (6th Cir. 2012).

The trial judge also found that the petitioner failed to show that the evidence actually was suppressed. In reaching that conclusion, she wrote:

> In defendant's motion he states that DNA information was not turned over. However, he provides no record evidence to support this allegation. He cites to [sic]

-19-

a letter from Dr. Theodore Kessis dated May 8, 2007, six months prior to trial and acknowledges counsel's request of May 24, 2007 for the data. There is no evidence that Dr. Kessis did not receive the information prior to trial.

If the data was not received, defendant did not renew his request prior to trial, did not seek sanctions for failure to comply with the court's order and provides no evidence that the information was not provided. There is no sworn testimony from Dr. Kessis that he did not receive the requested information or that it would have affected his potential testimony. There is no record evidence to support defendant's belated claim that a discovery order was violated. Defendant has failed to prove that the state possessed evidence favorable to the defendant or that he did not possess the information.

Order Denying Mot. for Relief From J. at 16-17 (No. 07-20463, Genesee Co. Cir. Ct., Nov. 18, 2010).

That reasoning does not contravene or unreasonably apply Supreme Court precedent. The burden is on a habeas petitioner to prove that evidence that is required to be disclosed to him under *Brady* was not disclosed to him. *Coe v. Bell*, 161 F.3d 320, 344 (6th Cir. 1998). Conclusory allegations will not do. *See Burns v. Lafler*, 328 F. Supp. 2d 711, 724 (E.D. Mich. 2004). The letter from Dr. Kessis on which the petitioner relies does not establish that Dr. Kessis did not have access to the raw data within the six months between the letter's date and the start of trial. And it is reasonable to infer from the absence of any further complaint from the defense that the data ultimately was furnished.

Finally, the state court concluded that the petitioner failed to show prejudice, declaring:

Accordingly, defendant has failed to show that any failure by the prosecutor to provide the requested information was outcome determinative. Defendant has failed to establish "actual prejudice," i.e., that but for the alleged error in the DNA information, he would have had a reasonably likely chance of acquittal.

Order Denying Mot. for Relief From J. at 18 (No. 07-20463, Genesee Co. Cir. Ct., Nov. 18, 2010).

-20-

Here, the state court did not apply Supreme Court law correctly.  The state's failure to disclose the *Brady* material need not be "outcome determinative."  *Smith v. Cain*, --- U.S. ---, ---, 132 S. Ct. 627, 630 (2012).  As the Supreme Court has explained:

> "[E]vidence is 'material' within the meaning of *Brady* when there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different."  *Cone v. Bell*, 556 U.S. 449, 469-70 (2009).  A reasonable probability does not mean that the defendant "would more likely than not have received a different verdict with the evidence," only that the likelihood of a different result is great enough to "undermine[ ] confidence in the outcome of the trial."  *Kyles v. Whitley*, 514 U.S. 419, 434 (1995) (internal quotation marks omitted).

*Ibid.*  Nonetheless, the petitioner has not offered anything to suggest that a failure to disclose raw DNA data to Dr. Kessis (if, in fact, that evidence was not disclosed) would have had any effect on the defense's presentation of its case.  The raw DNA data, which even Dr. Kessis believed was probably "issue free," most likely would have played no role in questioning the state's DNA expert's conclusion that the two recovered cigarette butts showed the petitioner was a major donor on one, and Randy Snyder's DNA matched the other.

The petitioner is not entitled to habeas corpus relief on his *Brady* claim.

## H.

In claims VIII and X, the petitioner challenges several aspects of his trial counsel's performance, contending that he received ineffective assistance of counsel in violation of the Sixth Amendment.

Success on such claims is relatively rare, because the standard for obtaining habeas corpus relief is "'difficult to meet.'"  *White v. Woodall*, --- U.S. ---, 134 S. Ct. 1697, 1702 (2014) (quoting *Metrish v. Lancaster*, 569 U.S. ---, ---, 133 S. Ct. 1781, 1786 (2013)).  In the context of a habeas corpus petition presenting an ineffective assistance of counsel claim under *Strickland v. Washington*,

466 U.S. 668 (1984), the standard is "all the more difficult" because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential and when the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at 105 (citations and quotation marks omitted). "[T]he question is not whether counsel's actions were reasonable," but whether "there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Ibid.*

A violation of the Sixth Amendment right to effective assistance of counsel is established when an attorney's performance was deficient and the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. The defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (quoting *Strickland*, 466 U.S. at 688) (internal quotes omitted)).

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. The petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Unless the petitioner demonstrates both deficient performance and prejudice, "it cannot be said that the conviction resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687.

1.

Several of the petitioner's arguments that his trial attorney performed deficiently deal with issues discussed above. He contends that his attorney's performance fell below the prevailing professional norms when she (a) failed to object or bring to the court's attention that the jury panel was not sworn before *voir dire* began; (b) did not object or move to strike the prosecutor's closing arguments that were not based on the record evidence; (c) failed to object to the trial judge's characterization of police witness Shanlian as "our friend" when he was sworn to testify; and (d) failed to challenge the extradition warrant.

The state appellate court acknowledged that the record did not disclose the administration of an oath before the jury was questioned during jury selection. Neither side objected, and the omission obviously was a trial court oversight. The Michigan Court of Appeals assumed without deciding that defense counsel's lack of objection constituted deficient performance, but it held that the petitioner "has not demonstrated the requisite prejudice necessary to establish a claim of ineffective assistance of counsel." *Thompson*, 2009 WL 2605417, at *5 (citations omitted). That holding does not misapply or contravene Supreme Court precedent. The record does not contain any indication that any of the prospective jurors were untruthful in their responses during *voir dire*, or that they concealed any information from the court or the parties.

Because the prosecuting attorney's closing argument was based on evidence in the record, or on inferences that could be drawn reasonably from the evidence, defense counsel can not be deemed ineffective for failing to object to the argument. An attorney is not ineffective for failing to raise a meritless issue. *Shaneburger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010) (quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)). Similarly, defense counsel's lack of objection to the

trial court's reference to police officer Shanlian as "our friend" does not amount to defective performance. The comment in context was innocuous, and objecting to that statement may well have highlighted it or provoked an unfavorable response from the court. The court of appeals found that the petitioner's ineffective assistance of counsel claim "premised on this argument is without merit." *Thompson*, 2009 WL 2605417, at *6. The trial court rejected the argument that defense counsel was ineffective by not challenging the extradition warrant, because such challenges must be made in the rendering state, and defense counsel was not representing the petitioner at that stage of the case. It is abundantly clear that defense counsel cannot perform ineffectively when she has not yet been engaged. Those holdings reasonably applied *Strickland*.

2.

The petitioner criticizes defense counsel' cross examination of the bartender, Julie Vega, contending that she failed to confront Vega with her prior inconsistent statements. The trial court found that this argument was belied by the record, because defense counsel indeed questioned Vega on the subject. Order Denying Mot. for Relief From J. at 18 (No. 07-20463, Genesee Co. Cir. Ct., Nov. 18, 2010) (citing Trial Tr. 191-98 (Jan. 9, 2008)). The state court accurately represented the trial record in this case. The petitioner's complaints about the vigor or intensity of defense counsel's cross-examination of the eyewitness does not justify issuance of a habeas writ. "[H]ow much to impeach a witness is generally a matter of trial strategy left to the discretion of counsel." *Dansby v. Hobbs*, 766 F.3d 809, 835 (8th Cir. 2014); *see also Dell v. Straub*, 194 F. Supp. 2d 629, 651 (E.D. Mich. 2002) ("Courts generally entrust cross-examination techniques, like other matters of trial strategy, to the professional discretion of counsel."). Moreover, federal courts "take a highly deferential look at counsel's performance through the deferential lens of § 2254(d)." *Pinholster*, 131

-24-

S. Ct. at 1403 (citation and internal quotation marks omitted).  No habeas relief is warranted on this aspect of the claim.

3.

The petitioner argues that defense counsel performed deficiently because she did not call an expert witness to rebut the state's DNA expert.  In denying the post-conviction motion, the state trial judge determined that the decision not to call such a witness amounted to reasonable trial strategy. That decision reasonably applied Sixth Amendment jurisprudence as determined by the Supreme Court.  Decisions as to what evidence to present and whether to call certain witnesses are generally presumed to be a matter of trial strategy, although such decisions must be reasonable.  *See Roe v. Flores–Ortega*, 528 U.S. 470, 481 (2000).  The decision not to call witnesses or present other evidence may constitute ineffective assistance of counsel only when it deprives a defendant of a substantial defense.  *See Hutchison v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002).  In this case, it is apparent that defense counsel consulted with a DNA expert, who reviewed the evidence and was aware of the state's expert's conclusion.  And there was other evidence in the case placing the petitioner at the murder scene, including his admission to jailhouse informant James Newall and police officer Shanlian that he was present at the fishing site where Beauchamp's body was found. It would have been reasonable for defense counsel to conclude that attempting to contest the DNA evidence was a dead end.  No deficient performance can be found in that decision.

4.

The petitioner also argues that defense counsel failed to investigate and locate witnesses that could refute the testimony of a jailhouse informant — James Newall — who testified about the petitioner's statements made to him while they, along with Snyder, were serving a prison sentence

-25-

in a facility in St. Louis, Michigan in 1995. Newall also saw the petitioner at a restaurant in 1996, and was in the county jail with the petitioner while the petitioner was awaiting trial in 2007, when the petitioner told Newall about some of the details of the murder of Beauchamp. The trial court rejected this argument, presented in the petitioner's post-conviction motion, because he did not present any proof that these "unidentified" witnesses could offer anything helpful to the defense. Order Denying Mot. for Relief From J. at 22 (No. 07-20463, Genesee Co. Cir. Ct., Nov. 18, 2010). The petitioner did obtain affidavits from two inmates, Andre Davis and George Moore, and submitted them to the Michigan Court of Appeals as part of a motion for an evidentiary hearing, which the petitioner filed in his appeal from the denial of his first post-conviction motion. The petitioner, however, did not present those affidavits to the trial court when he litigated that post-conviction motion, and the trial court considered the issue abandoned. *Id.* at 23.

Trial counsel did not call either Davis or Moore as defense witnesses, although she asked Newall on cross-examination if he knew them. Newall denied any knowledge of them by name. Based on their affidavits, the two might have impeached Newall's testimony about the petitioner's statements made to Newall. It is not clear from the present record that trial counsel had the information Davis or Moore could offer at the time of trial. But even if she did, it is conceivable that she weighed the risk of calling jail inmates as witnesses, which could have led to additional questioning by the prosecutor of Newall on his relationship with the petitioner in 1995. Defense counsel took pains to prevent the prosecutor from eliciting testimony from Newall that his contact with the petitioner in 1995 was in a prison setting, that the petitioner was a member of a "Blue Royal gang," and that the petitioner's dispute with Beauchamp was based on a robbery of the grandmother of a fellow gang member. Tr. of Pretrial Hr'g at 5-6 (Jan. 4, 2008).

As noted above, the petitioner did not submit the Davis and Moore affidavits to any court until he filed his application for leave to appeal the denial of his post-conviction motion in the Michigan Court of Appeals. That court denied the application in a form order on November 22, 2011, which also denied the motion for an evidentiary hearing. In assessing that ruling on habeas review, this Court must presume that the state appellate court was aware that defense counsel's decision not to call Davis or Moore was presumed to be a matter of trial strategy, *see Flores–Ortega*, 528 U.S. at 481, and that defense counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment," *Strickland,* 466 U.S. at 690. "In such circumstances, federal courts are to afford 'both the state court and the defense attorney the benefit of the doubt.'" *Woods v. Etherton*, --- U.S. ---, ---, 136 S. Ct. 1149, 1151 (2016) (quoting *Burt v. Titlow,* 571 U.S. ---, ---, 134 S.Ct. 10, 17 (2013)).

The petitioner also contends that defense counsel should have used the affidavits to impeach Newall. But those affidavits themselves surely would have been inadmissible hearsay. Trial counsel will not be found to have performed deficiently by not offering evidence that would amount to inadmissible hearsay. *Ryder v. Kerns*, 335 F. App'x 529, 537 (6th Cir. 2009).

The petitioner cannot prevail on his ineffective assistance of counsel claim on this basis against the strong "double deference" in favor of the state courts.

5.

The petitioner also argues that his trial attorneys performed deficiently because they did not investigate the sufficiency of information supporting the arrest warrant, and failed to challenge the arrest warrant for lack of probable cause. He bases this argument on a report that Randy Snyder failed a polygraph test, which included questions about his involvement with the petitioner in

Beauchamp's murder.  But that report likely would not have affected the probable cause determination or the issuance of the arrest warrant.  As the state trial judge explained in her opinion denying the petitioner's second post-conviction motion (which he filed contending that the polygraph report was newly-discovered evidence):

> The newly discovered evidence appears to be a report authored by Detective Sergeant David Dwyer of the Genesee County Sheriffs Department regarding a polygraph administered to Thompson's co-defendant Randy Wayne Snyder on April 4, 2006. In that report Dwyer sets forth the four test questions.  He then sets forth Snyder's pre-test version of the answers to the questions, and Snyder's post-test answers to the questions.  Dwyer indicated that Snyder was not being truthful in his statements to Dwyer.  Particularly Snyder had initially minimized his involvement in dragging victim Michael Beauchamp's body into the water, although, post-test, he admitted that he actually helped Danny Thompson drag Michael Beauchamp into the water.  Snyder further admitted holding Beauchamp while they were in the water, for a few seconds.  (Although the polygraph report indicates Snyder's written statement is attached thereto, it was not attached to the copy of the polygraph report attached by the defendant as Attachment (E) to his motion.)
>
> Either of the two versions of Snyder's involvement were sufficient to inculpate both Snyder and Thompson in the murder of Michael Beauchamp.

Op. & Order Denying Successive Mot. for Relief From J. at 2 (No. 07-20463, Genesee Co. Cir. Ct., May 28, 2014).

Based on those observations, the state court concluded that defense counsel did not preform deficiently, and that no prejudice resulted.  Those conclusions reasonably applied *Strickland*.  As noted earlier, the validity or invalidity of an arrest warrant will not undermine a conviction. *Gerstein*, 420 U.S. at 119.

The petitioner argues that defense counsel should have attacked the admissibility of his statements to the police on the basis of the "invalid" arrest warrant.  But the arrest warrant was based on probable cause, and defense counsel cannot be faulted for not pursuing a dead-end challenge. *Greer*, 264 F.3d at 676.  Moreover, as noted earlier, defense counsel did mount a challenge to the

-28-

admissibility of the petitioner's statements on the ground that they were involuntary. There was no deficient performance on this score.

## I.

Lastly, the petitioner contends that he received ineffective assistance of appellate counsel. He first raised that claim in his second post-conviction motion in the state court. He brings the claim here in his amended habeas petition. This argument is premised primarily on the contention that appellate counsel "withheld" the report of Randy Snyder's polygraph test results. The petitioner argues that the report should have led to a challenge to the arrest warrant, which, in his view, would have invalidated his confession and toppled the entire prosecution. And he believes that appellate counsel was ineffective by not raising on direct appeal trial counsel's ineffectiveness.

The state court rejected this argument, noting that the polygraph report was available to defense counsel by the time the appeal was being prosecuted. More tellingly, there is evidence that appellate counsel discussed the petitioner's desire to challenge the arrest warrant on appeal, and that appellate counsel believed the issue lacked merit. He invited the petitioner to raise the issue in his *pro se* Standard 4 brief, but the petitioner did not do so.

The Due Process Clause guarantees a defendant the right to the effective assistance of counsel on the first appeal by right. *Evitts v. Lucey*, 469 U.S. 387, 396-97 (1985). But it is well established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983). In fact, "the process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail . . . is the hallmark of effective appellate advocacy." *O'Sullivan v. Boerckel*, 526 U.S. 838, 858 (1999) (quotation marks and citations omitted).

-29-

"[A]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" *Shaneberger*, 615 F. 3d at 452 (quoting *Greer*, 264 F.3d at 676). Trial counsel was not constitutionally ineffective, and the arrest warrant was sound. The petitioner is not entitled to habeas relief on his argument that his appellate lawyer mishandled his direct appeal.

### J.

The petitioner also has filed motions for discovery of the affidavits submitted in support of his arrest warrant, and a motion for issuance of subpoenas. These requests, presumably, are made to further the petitioner's challenge to his arrest warrant, discussed above.

A habeas corpus petitioner has no right to discovery in a habeas proceeding as a matter of course. *Bracy v. Gramley*, 520 U.S. 899 (1997); *Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001). Under Rule 6(a), Rules Governing Section 2254 Proceedings in the United States District Court, "[a] judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery." Discovery is warranted only where "specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief [.]" *Harris v. Nelson*, 394 U.S. 286, 299 (1969); *Williams v. Bagley*, 380 F.3d 932, 974 (6th Cir. 2004). The petitioner has not done so here. The state court records demonstrate that the arrest warrant was supported by probable cause, and the validity of that warrant is largely irrelevant at this stage of the proceedings.

Moreover, the Supreme Court held that habeas review under 28 U.S.C. § 2254(d) must be "limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. at 181. The petitioner does not suggest that his ineffective assistance of counsel claim was not adjudicated on the merits in state court, and in fact argues that his habeas

claims were fully presented in his state court proceedings.  Therefore, *Cullen* precludes the Court from expanding the record in this Court when reviewing the petitioner's ineffective assistance of counsel claim under 28 U.S.C. § 2254(d)(1).  *See Campbell v. Bradshaw*, 674 F.3d 578, 590 n.3 (6th Cir. 2012) (considering affidavits submitted to the state courts on post-conviction review, but declining to consider testimony taken in federal evidentiary hearing because it was not part of the state court record).

The petitioner's motions will be denied.

### III.

The state court decisions in this case were not contrary to federal law, an unreasonable application of federal law, or an unreasonable determination of the facts.  The petitioner has not established that he is presently in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the original and amended petitions for a writ of habeas corpus [dkt #1, 29] are **DENIED.**

It is further **ORDERED** that the petitioner's motion for habeas Rule 6 discovery [dkt. # 36] and motion for issuance of subpoena *duces tecum* [dkt. #38] are **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:  August 17, 2016

-31-

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on August 17, 2016.

s/Susan Pinkowski
SUSAN PINKOWSKI